IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIA WIECK, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br> vs.<br><br>CIT BANK, N.A.; FINANCIAL FREEDOM; SEATTLE SPECIALTY INSURANCE SERVICES, INC.; CERTAIN UNDERWRITERS OF LLOYD'S, LONDON; and GREAT LAKES REINSURANCE (UK), PLC,<br><br>    Defendants. | Civ. No. 16-00596 JMS-RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, ECF NOS. 123, 124 & 125 |

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, ECF NOS. 123, 124 & 125

## I.  INTRODUCTION

On March 30, 2018, this court issued a comprehensive decision ("the March 30th Order") that granted in part and denied in part several motions to dismiss the First Amended Complaint ("FAC") in this putative class action, which arises out of lender-placed (or "forced-placed") hurricane insurance on reverse mortgages.  *See* ECF No. 96; *Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093 (D.

1

Haw. 2018).  The March 30th Order determined that some of Plaintiff Julia

Wieck's ("Plaintiff" or "Wieck") claims — certain non-preempted breach of

contract, and unfair or deceptive trade practices allegations — survived the

motions to dismiss, but the Order dismissed other claims.  The court granted

Plaintiff leave to file a Second Amended Complaint ("SAC") solely to attempt to

rectify pleading deficiencies with the claims that were dismissed without prejudice

as explained in the March 30th Order.  Accordingly, Plaintiff filed a SAC on May

11, 2018, ECF No. 104, and Defendants now move to dismiss the repleaded

claims.  ECF Nos. 123, 124 & 125.  Based on the following, the Motions are

GRANTED in part and DENIED in part.

## II.  BACKGROUND

Because the March 30th Order comprehensively set forth the factual

and legal background (at least as to Wieck's claims[1]), the instant Order does not

repeat that background, and the court presumes a detailed familiarity with that

prior Order.  This Order picks up where the March 30th Order left off, and only

discusses new allegations in the SAC as necessary to address the present Motions.

---

[1]  Wieck is the lead Plaintiff in an alleged class action, and neither the March 30th Order nor the instant Order addresses the class allegations.

The court otherwise relies on the March 30th Order for the background and context for the Motions. *See Wieck*, 308 F. Supp. 3d at 1098-1104.

Similar to the FAC, the SAC alleges the following Counts:

- Count One (Breach of Contract) against Defendants Financial Freedom and CIT Bank, N.A. (collectively sometimes referred to as "CIT").

- Count Two (Breach of Implied Covenant of Good Faith and Fair Dealing) against Financial Freedom.

- Count Three (Violations of Hawaii Revised Statute ("HRS") § 480-2) against Financial Freedom.

- Count Four (Violations of HRS § 480-2) against Defendants Certain Underwriters of Lloyd's, London ("Lloyd's"); Great Lakes Reinsurance (UK), PLC ("Great Lakes"); Seattle Specialty Insurance Services, Inc. ("Seattle Specialty"); and National General Lender Services, Inc., ("National General").[2]

---

[2] The SAC sometimes refers to National General as "Sterling/National General," where Sterling is "the entity previously known as ZC Sterling Corporation" and is an entity related to National General. *See* ECF No. 104 at 6, SAC ¶ 9. National General was not named as a Defendant in the FAC, nor otherwise mentioned in the FAC. Plaintiff added it as a Defendant in the SAC, and that addition is addressed later in this Order.

- Count Five (Tortious Interference with a Business Relationship) against Lloyd's, Great Lakes, Seattle Specialty, and National General, (construed as a claim for tortious interference with contract under Hawaii law).

- Count Six (Violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)) against all Defendants.

- Count Seven (Violation of RICO, 18 U.S.C. § 1962(d) (conspiracy)) against all Defendants.

*See* ECF No. 104. Unlike the FAC, the SAC no longer alleges a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., against Financial Freedom and CIT (a claim that the March 30th Order dismissed without prejudice).

CIT's Motion to Dismiss challenges aspects of Counts One, Two, Three, Six and Seven. ECF No. 123. Seattle Specialty and National General's Motion to Dismiss challenges the addition of National General as a Defendant, and Counts Five, Six, and Seven. ECF No. 124. Similarly, Lloyd's and Great Lakes challenge aspects of the SAC's additional allegations in Count Four, as well as Counts Five, Six, and Seven. ECF No. 125. Plaintiff filed an omnibus Opposition on August 3, 2018. ECF No. 145. Replies were filed on August 17, 2018. ECF

Nos. 147, 148 & 150. The court heard the Motions on September 10, 2018. ECF
No. 156.

## III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss
for "failure to state a claim upon which relief can be granted[.]" A Rule 12(b)(6)
dismissal is proper when there is either a "'lack of a cognizable legal theory or the
absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital
Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica
Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Although a plaintiff need not identify the legal theories that are the
basis of a pleading, *see Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 346
(2014) (per curiam), a plaintiff must nonetheless allege "sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)). This tenet — that the court must accept as true all of the allegations
contained in the complaint — "is inapplicable to legal conclusions." *Id.*
Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at
555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations

in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. <u>DISCUSSION</u>

### A.   CIT's Motion to Dismiss

Several aspects of CIT's Motion are not seriously contested. First, CIT argues that Financial Freedom should be dismissed as a party because Financial Freedom is (or was) only a corporate division of CIT Bank, N.A.[3] *See,*

---

[3] CIT states that CIT Bank, N.A., sold Financial Freedom and its related reverse mortgage portfolio on June 4, 2018. ECF No. 123-1 at 6.

*e.g.*, *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978) ("A division of a corporation is not a separate entity but is the corporation itself."); *Western Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587, 590-91 (5th Cir.1980) (holding that a division of a corporation is not a separate legal entity); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1216 (S.D. Fla. 2015) (same principle applied in case challenging force-placed insurance). Plaintiff does not object to this argument. *See* ECF No. 158 at 5, Tr. (Sept. 10, 2018) at 5. Accordingly, Financial Freedom is DISMISSED as a separate Defendant; any remaining claims against "Financial Freedom" are construed as being made against CIT Bank, N.A., itself.

Second, CIT points out that Count Two alleges a bad faith tort claim — a claim that the March 30th Order dismissed with prejudice, and without leave to amend.[4] *See Wieck*, 308 F. Supp. 3d at 1120 n.14 ("Count Two (seeking damages for 'breach of implied covenant of good faith and fair dealing' is DISMISSED with prejudice, although its [factual] allegations are relevant for the breach-of-contract claim [against CIT.]"). As the March 30th Order noted, there is no independent cause of action for breach of the duty of good faith and fair dealing

---

[4] To the extent Plaintiff re-alleged this claim to preserve the dismissal for appeal, it was unnecessary to include it in the SAC. *See, e.g.*, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.").

in a non-insurance contract (such as the reverse mortgage at issue with CIT). *See, e.g.*, *Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. Ct. App. 2007). Count Two is again DISMISSED with prejudice.

Some aspects of the FAC's Count Three, alleging unfair or deceptive trade practices under HRS chapter 480 against CIT, survived CIT's previous challenge — aspects that were not preempted by the Home Owners Loan Act of 1933. *See Wieck*, 308 F. Supp. 3d at 1113-1124. In the SAC, however, Plaintiff attempts to buttress Count Three with allegations that CIT also violated HRS § 431:13-103(a)(8), which — unless otherwise expressly provided — makes rebates of premiums an unfair or deceptive act or practice in the business of insurance.[5] Plaintiff is not asserting a specific cause of action under chapter 431

---

[5] Section 431:13-103(a)(8) makes the following an unfair method of competition and an unfair or deceptive act or practice in the business of insurance:

> Rebates. Except as otherwise expressly provided by law:
>
> (A) Knowingly permitting or offering to make or making any contract of insurance, or agreement as to the contract other than as plainly expressed in the contract, or paying or allowing, or giving or offering to pay, allow, or give, directly or indirectly, as inducement to the insurance, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits, or any valuable consideration or inducement not specified in the contract; or
>
> (B) Giving, selling, or purchasing, or offering to give, sell, or purchase as inducement to the insurance or in connection therewith, any stocks, bonds, or other securities of any insurance

(continued . . .)

for this violation; rather she is bolstering the basis for a § 480-2 claim. But

§ 431:13-103 only applies to those in "the business of insurance," and CIT is not

an insurer and is not in that business. *See, e.g.*, *Noetzel v. Haw. Med. Serv. Ass'n*,

2016 WL 4033099, at *9 (D. Haw. July 27, 2016) ("Section 431:13-103 prohibits

insurers from committing certain acts that constitute unfair methods of competition

and unfair or deceptive acts or practices."). These new allegations in Count Three

are immaterial and unnecessary for a § 480-2 claim against CIT (although they

might be relevant as to the other Defendants as pled in other Counts).

Accordingly, the court STRIKES the § 431:13-103(a)(8) allegations in paragraph

154 of Count Three of the SAC as to CIT. *See* Fed. R. Civ. P. 12(f) ("The court

may strike from a pleading . . . any redundant, immaterial, impertinent, or

scandalous matter.").[6]

///

///

///

---

(. . . continued)

> company or other corporation, association, or partnership, or any
> dividends or profits accrued thereon, or anything of value not
> specified in the contract[.]

[6] Along with the other Defendants, CIT also challenges the RICO Counts. The court addresses the RICO arguments later in this Order.

**B.     Seattle Specialty & National General's Motion to Dismiss**

### 1.     *National General is Dismissed Without Prejudice*

Plaintiff did not name National General as a Defendant in the FAC. Plaintiff, however, added National General in the SAC (both as a Defendant and throughout the SAC), along with a paragraph explaining how National General is related to Seattle Specialty and that it "managed forced-place insurance programs for insurance companies and mortgage service[rs] during the relevant period." SAC ¶ 9.  But, as Seattle Specialty and National General's Motion points out, the March 30th Order did not grant Plaintiff leave to add any new parties to the SAC. Rather, the court concluded that "[l]eave [to file a SAC] is granted *solely* as permitted in this [March 30th] Order."  308 F. Supp. 3d at 1131 (emphasis added). That is, by adding National General, Plaintiff exceeded the leave to amend that the court granted.  Accordingly, National General is DISMISSED without prejudice to Plaintiff filing an appropriate Rule 15 motion to amend the SAC to add a new Defendant.[7]

---

[7] Plaintiff explains that subsequent discovery provided a basis for adding National Discovery.  If Plaintiff files a motion to amend, it may make that argument.  Likewise, National General may raise the arguments that it makes now about the futility of amendment (i.e., lack of personal jurisdiction, lack of standing).  But until such a motion is filed, all these arguments are premature.

## 2. Count Five (Tortious Interference with Contract) is Dismissed With Prejudice.

Seattle Specialty also moves to dismiss Count Five, which re-alleges a claim for Tortious Interference with Contract.[8] The court dismissed this claim in the FAC because it failed to allege sufficient facts establishing the requisite intent. *Wieck*, 308 F. Supp. 3d at 1128-29. In particular, given a mortgage contract between Plaintiff and CIT, there were no factual allegations that "interfering" third parties (Seattle Specialty — or Lloyd's or Great Lakes) intended to induce CIT to breach the mortgage when CIT allegedly charged unnecessary costs to Plaintiff. *Id.* at 1129. There were no factual allegations that these Defendants directed CIT

---

[8] As the March 30, 2018 Order stated:

> The requisite elements of tortious interference with contractual relations are: 1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff.

308 F. Supp. 3d at 1128 (quoting *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Haw. 35, 44, 122 P.3d 1133, 1142 (Haw. Ct. App. 2005)). "The third element — intent — 'denotes purposefully improper interference,' and 'requires a state of mind or motive more culpable than mere intent.'" *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 116, 148 P.3d 1179, 1218 (2006) (quoting *Omega Envtl., Inc. v. Gilbarco*, 127 F.3d 1157, 1166 (9th Cir. 1997) and *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358 (9th Cir. 1987)). "[I]t must be shown that the third party acted with intent and legal malice, i.e., 'the intentional doing of a harmful act without legal or social justification or excuse, or, in other words, the wilful violation of a known right.'" *Chow v. Alston*, 2 Haw. App. 480, 484, 634 P.2d 430, 434 (1981) (quoting 45 Am. Jur. 2d, Interference § 3 (1969)).

to charge Plaintiff for the commissions and thus to cause a breach. *Id.* There were no factual allegations that these Defendants interfered with the mortgage with an intent to harm Wieck. *See Locricchio*, 833 F.2d at 1358 (requiring "a state of mind or motive more culpable than mere intent"); *Chow*, 2 Haw. App. at 484, 634 P.2d at 434 (requiring "intent and legal malice . . . the willful violation of a known right").

The SAC does not cure these deficiencies. The only substantive addition to Count Five is a statement that "items extraneous to the actual costs of the necessary insurance," were "knowingly included . . . in violation of the mortgage agreement." SAC ¶ 187; *see also* ECF No. 154 at 70 (redline comparing paragraph 187 of the SAC with paragraph 176 of the FAC). But even assuming this new conclusory allegation is true, at most it only means that Seattle Specialty (or Lloyd's or Great Lakes) knew CIT was breaching the mortgage by charging unnecessary costs. There are still no facts indicating that these Defendants acted with "legal malice," and intended to induce CIT to breach the contract. There is still nothing indicating that these Defendants actually *directed* CIT to charge the allegedly illegal commissions to Plaintiff, or that they otherwise intended for CIT to do so. *See Meridian Mortg.*, 109 Haw. at 48, 122 P.3d at 1146 ("The third element, intent, denotes purposefully *improper* interference. The plaintiff must

prove that the defendant either pursued an improper objective of harming the plaintiff or used wrongful means that caused injury in fact.  Asserting one's rights to maximize economic interests does not create an inference of ill will or improper purpose.") (quoting *Omega Envtl., Inc. v. Gilbarco., Inc.*, 127 F.3d 1157, 1166 (9th Cir. 1997)); *DeVoto v. Pac. Fid. Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980) ("Tortious interference requires a state of mind and a purpose more culpable than 'intent' . . . .  The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability.") (applying the Restatement (Second) Torts § 766 cmt. j & §767 cmt. d (1979)).

Accordingly, Count Five is DISMISSED.[9]  Because Plaintiff was already given leave to amend to attempt to rectify pleading deficiencies, this dismissal is with prejudice.[10]

## C.     Lloyd's and Great Lakes' Motion to Dismiss

In addition to also challenging Count Five as noted above, Lloyd's and Great Lakes seek to dismiss or strike the SAC's new allegations in Count Four,

---

[9]  This dismissal applies both to Seattle Specialty, as well as to Lloyd's and Great Lakes, which made identical arguments in their Motion to Dismiss.

[10]  Along with the other Defendants, Seattle Specialty also moves to dismiss the RICO Counts.  The court addresses the RICO Counts later in the Order.

which (as in the FAC) asserts violations of HRS § 480-2 for unfair or deceptive trade acts or practices. The March 30th Order concluded that Count Four's allegations against Seattle Specialty, Lloyd's, and Great Lakes were sufficient to state a plausible § 480-2 claim because the FAC alleged in some detail that these Defendants participated in CIT's charging Wieck insurance premiums that exceeded the "actual costs" (including the costs of undisclosed commissions and "kickbacks"). 308 F. Supp. 3d at 1124. "[T]he higher the premium, the higher the 'compensation' for placing the insurance. 'The insurance premiums were also inflated to pay for the kickbacks and other unlawful benefits that Lloyd's, Great Lakes and Seattle Specialty provided to Financial Freedom.'" *Id.* (quoting FAC ¶ 163). And even if the Defendants disclosed that CIT might receive compensation for placing the insurance, "it could be misleading and unfair for purposes of chapter 480 to then *charge* Wieck for the 'compensation' by including it in the amounts represented to be a premium." *Id.*

Those types of allegations remain, and with these Motions the court will not revisit its decision that the allegations are sufficient to state a plausible § 480-2 claim. Lloyd's and Great Lakes, however, seek to dismiss or strike the SAC's *additional* allegations supporting a § 480-2 claim (similar to those that the court struck from Count Three as to CIT) — that Lloyd's and Great Lakes also

14

violated HRS § 431:13-103(a)(8), which prohibits rebates of premiums as an unfair or deceptive act or practice by those in the business of insurance.[11]  Lloyd's and Great Lakes argue that they are "surplus lines" insurers, SAC ¶¶ 10-11, and that HRS §§ 431:8-300 et seq., specifically cover surplus lines insurance.[12]  As surplus lines insurers, they argue, they "fill an important niche in the insurance market by covering otherwise uninsurable risks," and thus "require flexibility to modify exclusions and coverages in order to manage unusual risks[.]"  ECF No. 125-1 at 30 (quoting *James River Ins. Co. v. Blue Ox Dance Hall, LLC*, 2017 WL 5195877,

---

[11]  *See also* HRS § 431:13-101 ("The purpose of this article is to regulate trade practice in the business of insurance . . . by defining, or providing for the determination of, all acts, methods, and practices which constitute unfair methods of competition or unfair or deceptive acts or practices in this State, and by prohibiting the trade practices so defined or determined.").

[12]  The Hawaii Supreme Court has explained:

> "Surplus line insurance" is by statutory definition "insurance procured from an unauthorized insurer."  HRS § 431-329 (1985).  As the term implies, it is insurance procured "in addition to or in excess of the amount and coverage which can be procured from [a] substantial number of . . . insurers [authorized to transact insurance in Hawaii]."  HRS § 431-330(2) (1985).  And such insurance can only be procured if "[a]fter diligent search the general agent determines in good faith that any portion or the full amount of insurance required to protect the interest of the insured, or insurance affording substantially the same protection, cannot be procured from a substantial number of the insurers authorized to transact that kind of insurance in [Hawaii]."  HRS § 431-330(1) (1985).  Surplus line insurers, therefore, insure risks that insurers authorized to transact insurance in Hawaii are unwilling to insure.

*Villagonza v. Hawaii Ins. Guar. Ass'n*, 70 Haw. 406, 407 n.2, 772 P.2d 1193, 1194 n.2 (1989).

at *3 (N.D. Okla. Nov. 9, 2017)).  They reason that § 431:13-103(a)'s specific prohibitions (defining "unfair methods of competition and unfair and unfair or deceptive acts or practices in the business of insurance") do not apply to surplus line insurers because article 8 of Chapter 431 (i.e., HRS §§ 431:8-101 to 431:8-329) does not mention § 431:13-103(a).  They thus essentially contend that they are exempt from all of those specific prohibitions.

As stated at the September 10, 2018 hearing, however, the court will not reach this question at this stage.  First, it is not necessary to reach the issue — regardless of whether or not § 431:13-103(a)(8) applies to these Defendants, Count Four remains against them.  Second, the briefing before the court is inadequate — Lloyd's and Great Lakes' memorandum only discusses this issue in three pages, and Plaintiff devotes only a footnote to refuting it.  Under these circumstances, it would be inappropriate for the court at this stage to opine on this complicated and important issue of state law, and address whether an entire class of insurers would be immune from all statutorily-defined unfair methods of competition or unfair or deceptive trade acts or practices in Hawaii.  In this regard, then, the Motion is DENIED.

///

///

**D.      The RICO Counts are Dismissed with Prejudice**

*1.      The SAC Fails to Establish all the Elements of a RICO Claim*

All three Motions seek to dismiss Counts Six and Seven, which are the re-alleged civil RICO Counts.  The March 30th Order dismissed the FAC's civil RICO Counts for several reasons.  First, the FAC failed to allege how each Defendant participated in the operation or management of a RICO enterprise — it improperly grouped Defendants together without sufficiently explaining each Defendant's role in the enterprise.  308 F. Supp. 3d at 1126.  Second, it failed to allege mail or wire fraud (the alleged predicate acts) with the necessary particularity.  That is, there were insufficient allegations of the specific intent necessary to constitute mail or wire fraud — the claim was based only on a series of letters sent by CIT (by or with assistance from the other Defendants) that, although perhaps deceptive, were inconsistent with a "specific intent to *defraud*." *Id.* at 1127.  Third, as to Seattle Specialty, Lloyd's, and Great Lakes, the claim failed for lack of proximate cause as to foreclosure-related damages — these Defendants were not involved in the foreclosure, and such damages were too attenuated from any fraudulent activity by these Defendants.  *Id.*  And because the RICO claim alleged in Count Six under 18 U.S.C. § 1962(c) failed, the RICO *conspiracy* claim alleged in Count Seven under 18 U.S.C. § 1962(d) also failed.

*Id.* (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy.")).[13]

The SAC added more detailed allegations regarding the nature of the alleged enterprise and each Defendant's particular role in directing the enterprise's affairs. *See, e.g.*, SAC ¶¶ 196-200. But even so, the SAC still fails to allege facts establishing that Defendants had a specific intent to defraud for purposes of the mail or wire fraud predicate acts. The SAC's theory of fraud remains based on the same series of letters sent to Plaintiff that contained allegedly material misrepresentations or omissions (for example, that Plaintiff was being charged $10,362.27 as the "cost" for lender-placed hurricane coverage, and that CIT or its affiliates might receive compensation in connection with placement). And the March 30th Order rejected those letters as a sufficient basis for fraud (even if they might be sufficient to constitute unfair or deceptive trade practices). 308 F. Supp. 3d at 1127. The SAC thus continues to lack facts that, if true, would establish a

---

[13] Although Defendants had also contended that the RICO claims were time-barred (and that issued had been briefed and argued by both sides), the March 30th Order did not reach that argument.

specific intent to defraud.[14]  In short, the SAC failed to cure all the identified

deficiencies as to the RICO claims.[15]

### 2.    The RICO Claims are Time-Barred

Furthermore, even if the SAC could be construed to state a plausible

RICO theory, the court agrees with Defendants that such a claim is barred by

RICO's four-year statute of limitations.  *See Grimmett v. Brown*, 75 F.3d 506, 511

(9th Cir. 1996) (applying an "injury discovery" rule, rather than a "last predicate

act" or "injury and pattern discovery" rule to RICO's four-year limitations period);

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (rejecting the "last predicate

act" rule); *Rotella v. Wood*, 528 U.S. 549, 554 (2000) (eliminating the "injury and

pattern discovery" rule).  The four-year limitations period begins to run "when a

---

[14]  The SAC also added allegations regarding violations of HRS § 431:13-103(a)(8) to the RICO Counts.  *See* SAC ¶ 203(b).  But even if such allegations might support a § 480-2 claim, they do not establish a specific intent to defraud sufficient for the alleged RICO predicate acts.

[15]  The court is not convinced by Plaintiff's argument made at the September 10, 2018 hearing that the SAC's additional allegations regarding "Regulation X" (12 C.F.R. § 1024.37, regarding forced-placed insurance), *see* SAC ¶ 27, establish a specific intent to defraud for a RICO claim.  Plaintiff argues that the letters Defendants sent to Plaintiff included language *required* by Regulation X, and therefore, so the argument apparently goes, Defendants must have known they were acting illegally if they deviated from the letters.  *See* Tr. (Sept. 10, 2018) at 28-29.  But in the court's view, the observation that letters sent to Plaintiff contained information required by Regulation X indicates that Defendants were attempting to *comply* with the Regulation, not defraud Plaintiff.  As the March 30th Order noted, Regulation X (which changed in late-2013, during the events alleged in the SAC) might be relevant when analyzing a § 480-2 or breach of contract claim (*see Wieck*, 308 F. Supp. 3d at 1123 n.17).  But its mere mention in the SAC does nothing to support a RICO claim.

plaintiff knows or should know of the injury that underlies [her] cause of action."
*Grimmett*, 75 F.3d at 510. A plaintiff has "constructive knowledge" of injury, for
RICO's limitations purposes, if she "'had enough information . . . which, if
reasonably diligent, would have led to discovery of the fraud.'" *Pincay v.
Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (quoting *Beneficial Standard Life
Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988)).

       For reasons similar to the March 30th Order's ruling that Plaintiff's
TILA claim was barred by TILA's one-year limitations period, it is undisputed that
Plaintiff discovered (or with any diligence should have discovered) her alleged
RICO injury as early as November 2010 when she received a letter advising her
that hurricane/wind insurance had been force-placed on her property and that such
insurance cost "significantly more" than insurance she could get on her own. SAC
¶¶ 82. At that point, she had at least constructive knowledge of the alleged fraud
(i.e., that the overcharged premium included commissions or kickbacks). *See
Pincay*, 238 F.3d at 1110. The SAC also alleges other predicate acts in 2010 as
part of the scheme, SAC ¶ 80, such that a pattern of racketeering activity had
occurred sufficient to trigger the limitations period (again, assuming for purposes
of a statute of limitations analysis that the alleged activity would suffice to state a

civil RICO claim). *See Grimmett*, 75 F.3d at 512 ("[N]o statute of limitations can begin to tick until a pattern exists[.]").

Plaintiff nevertheless contends, relying on a "separate accrual rule," that the same types of fraudulent placement of insurance occurred in 2013, triggering a new RICO cause of action (within the limitations period). Under this rule, "a [RICO] cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987)).

> [T]wo elements characterize an overt act which will restart the statute of limitations: 1) It must be a *new and independent act* that is not merely a reaffirmation of a previous act; and 2) It must *inflict new and accumulating injury* on the plaintiff.

*Id.* at 513 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)).

But these events, where hurricane/wind insurance was again placed on Plaintiff's property after she again let it lapse, were not "new and independent" acts that inflicted "new and accumulating injury" for purposes of the separate accrual rule. Rather, those 2013 letters were "merely a reaffirmation" of the prior instance of forced placement of insurance. And they did not "inflict new and

accumulating" injury.  *See, e.g.*, *Valdez v. Saxon Mortg. Servs., Inc.*, 2014 WL 7968109, at *16 (C.D. Cal. Sept. 29, 2014) (agreeing that the insurer's "purchase of an identical FPI policy in 2011 [within a limitations period] is not a 'new and independent act' sufficient to invoke the separate accrual rule.") (citing *Sasser v. Amen*, 2001 WL 764953, at *7 (N.D. Cal. July 2, 2001) ("The same injuries resulting from the same policies continuing into the limitations period are not 'new and independent' so as to be saved by the separate accrual rule.")).

Similarly, although "[e]quitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases," *Grimmett*, 75 F.3d at 514 (citation omitted), such tolling does not apply here.  The SAC does not plead facts that would establish that Defendants actively misled her, nor that she did not have actual or constructive knowledge of the alleged fraud.  *See id.* ("The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant *actively* misled her, and that she had neither actual nor constructive knowledge of the *facts constituting [her] cause of action* despite her due diligence.") (citations omitted).

Again, Plaintiff discovered, or could have discovered, her alleged injury when lender-placed insurance was first placed on her property in 2010 (more than four years before the Complaint was filed in 2016).  For this additional

reason, the RICO violations in Counts Six and Seven are DISMISSED with prejudice.

## V.  <u>CONCLUSION</u>

Defendants' Motions to Dismiss the SAC, ECF Nos. 123, 124 and 125, are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 2, 2018.



    /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Wieck v. CIT Bank, N.A., et al.*, Civ. No. 16-00596 JMS-RLP, Order Granting in Part and Denying in Part Motions to Dismiss Plaintiff's Second Amended Complaint, ECF Nos. 123, 124 & 125